IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

BARBARA AKON                                                                                    PLAINTIFF

V.                                                            CIVIL ACTION NO.: 4:08CV146-SA-JAD

THE QUITMAN COUNTY SCHOOL DISTRICT
and VALMADGE TOWNER, in his official and
individual capacities
                                                                                                DEFENDANTS

MEMORANDUM OPINION ON SUMMARY JUDGMENT

Presently before the Court is Defendants Quitman County School District and Valmadge Towner's Motion for Summary Judgment [33] and Plaintiff's Cross-Motion for Summary Judgment [37]. The Court finds as follows:

*Factual and Procedural Background*

Plaintiff Barbara Akon began her employment with the Quitman County School District (the District) on January 4, 2005, as the Quitman County Middle School principal. Plaintiff's contract was renewed for the 2005-2006 school year and 2006-2007 school year. Plaintiff asserts that all three contracts she entered into with the District were for eleven months or 220 days per year.

Plaintiff alleges that the District and Valmadge Towner, the District Superintendent, treated female principals differently than male principals in the terms and conditions of employment, pay, and other fringe benefits in violation of the Equal Protection Clause of the Fourteenth Amendment, 42 U.S.C. § 1983, and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et. seq.* Specifically, Plaintiff contends that Defendants employed Plaintiff and other female principals on eleven month or 220 day contracts while employing male principals on twelve month or 240 day contracts. According to Plaintiff, this resulted in lower salaries and fewer fringe benefits.

At some point, Plaintiff expressed her concerns to Superintendent Towner about being

treated differently than male principals with respect to length of her contract, pay, fringe benefits, sick leave policy, and attendance at professional development seminars. On February 5, 2007, Plaintiff requested Towner place her name on the Board of Trustees's agenda, so she could discuss her concerns at the next Board meeting. Later that same day, Plaintiff received an e-mail from Towner containing a notice of intent not to renew her contract as middle school principal for the next school year. On February 8, 2007, Towner removed Plaintiff from her position as middle school principal and transferred her to the position of Director of Curriculum Instruction, without any pay deduction, where she held this position until she left Quitman County in June 2007. Plaintiff contends her non-renewal and transfer constitutes retaliation in violation of the Equal Protection Clause of the Fourteenth Amendment, Title VII, and 42 U.S.C. § 1981.

Plaintiff was replaced by Roosevelt Ramsey as the middle school principal in February 2007. Plaintiff also alleges that Ramsey was paid a higher salary and was placed on a 240 day contract as opposed to her 220 day contract.

Defendants have moved for summary judgment on all Plaintiff's claims. Contained within Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment, Plaintiff moved for summary judgment against Defendant.

*Standard of Review*

Summary judgment is warranted under Rule 56(c) when evidence reveals no genuine dispute regarding any material fact, and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex

Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. Id. at 323, 106 S. Ct. 2548. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324, 106 S. Ct. 2548. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075. When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

*Discussion*

I.  Defendant Quitman County School District and Valmadge Towner's Motion for Summary Judgment

A.  Title VII

Title VII forbids employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1). "To make out a prima facie case of discrimination in compensation, a plaintiff must show that [she] was a member of a protected class and that [she] was paid less than a non-member for work requiring substantially the same responsibility." Taylor v.

3

UPS, Inc., 554 F.3d 510, 522 (5th Cir. 2008) (citing Uviedo v. Steves Sash & Door Co., 738 F.2d 1425, 1431 (5th Cir. 1984)). The same analysis applies even if the two employees whose salaries are being compared were employed at different times in the same position. Uviedo, 738 F.2d at 1431. A plaintiff may not rely on general statistical evidence; rather, she must present evidence that her pay was lower than specific employees who are not members of the protected class. Taylor, 554 F.3d at 523. The comparison must be to a "person who is or was similarly situated." Jones v. Flagship Int'l, 793 F.2d 714, 723 (5th Cir. 1986).

If a plaintiff establishes a prima facie case of compensation discrimination under Title VII, the employer can respond with evidence that the disparate wage payments were "made pursuant to (i) a seniority system; (ii) merit system; (iii) a system which measure earnings by quantity or quality of production; or (iv) a differential based on any other factor other than [gender]." Plemer v. Parsons Gilbane, 713 F.2d 1127, 1136 (5th Cir. 1983); see also Browning v. Southwest Research Inst., 288 Fed. Appx. 170, 174 (5th Cir. 2008). "Factors other than [gender] include, among other things, employees' different job levels, different skill levels, previous training, and experience." Browning, 288 Fed. Appx. at 174 (quotation omitted).

If the employer provides a legitimate, non-discriminatory reason for the alleged disparity, the plaintiff must show the purported reason is pretext for discrimination. Id. (citing Plemer, 713 F.2d at 1137 n.8). The plaintiff may satisfy this burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Little v. Republic Refining Co., 924 F.2d 93, 96 (5th Cir. 1991). "The plaintiff always has the . . . ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." Warren v. City of

4

Tupelo, 332 Fed. Appx. 176, 180 (5th Cir. 2009) (punctuation omitted) (quoting Tex. Dep't of Comty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)).

Plaintiff alleges that the District treated female principals differently than male principals in the terms and conditions of employment, pay, and other fringe benefits in violation of Title VII. Specifically, Plaintiff contends the District employed Plaintiff and other female principals on eleven month or 220 day contracts while employing male principals on twelve month or 240 day contracts. According to Plaintiff, this resulted in lower salaries and fewer fringe benefits, in that male principals with 240 day contracts received two weeks paid vacation, and female principals did not.

The District employed the following male principals on 240 day contracts at various schools within the District prior to, during, and subsequent to Plaintiff's tenure as the middle school principal:

(1) Roosevelt Ramsey: Quitman County High School, July 2, 2001-June 28, 2002; July 1, 2002-June 30, 2003 ($64,143.00); Quitman County Middle School, 2006-2007 (n/a); and July 2, 2007-June 30, 2008 (n/a);

(2) Carl Palmer: Quitman County Elementary School, 2004-2005 ($68,804.00); 2005-2006 ($69,804.00); and 2006-2007 (71,302.00);

(3) Charles Phipp: Quitman County Vocational School, 2003-2004 ($62,313.00); 2004-2005 ($65,429.00); 2005-2006 ($71,663.00); and 2006-2007 ($73,096.00);

(4) Edgar Holman: Quitman County High School, 2003-2004 ($67,350.00); 2004-2005 ($72,738.00); 2005-2006 ($73,738.00); 2006-2007 ($75,213.00); and 2007-2008 (n/a);

During these same time periods, the District employed two other female principals on 220 day contracts, in addition to Plaintiff:

(1) Lela Westbrooks: Quitman County Middle School, 2002-2003 ($55,418.00); 2003-2004 ($58,189.00); and Quitman County Elementary School, 2007-2008 ($73,374.00);

(2) Dr. Eunice Jordan: Quitman County Elementary School, 2001-2002 (n/a); 2002-2003 ($58,950.00); and 2003-2004 ($61,898.00)

(3) Barbara Akon: Quitman County Middle School, 2005-2006 ($63,564.00); 2006-2007 ($64,835.00).

A close reading of these salaries evidences the male principals' salaries with a 240 day contract as opposed to the 220 day contract provided to the female principals are higher for each comparable school year. For instance, Plaintiff's salary for the 2006-2007 school year was $64,835.00 on her 220 day contract. Palmer, a male elementary school principal, received $71,302.00 that same school year on his 240 day contract. Phipp, the vocational school principal, received $73,096.00 on his 240 day contract. Holman, the high school principal, received on his 240 day contract $75,213.00.

Defendants contend that regardless of gender, the high school principal has always received a higher salary than the middle school or elementary school principal, and that the elementary school principal has always received a higher salary than the middle school principal. While the Court agrees with Defendants' assertion, the salary gap still is wider when the principal has 240 day rather than a 220 day contract regardless of school.

In response to Plaintiff's argument that male principals receive two weeks paid vacation under their 240 day contract, the District contends that if Plaintiff was employed twenty days less than her male counterparts, then it seems logical that she could use this twenty days as vacation time each year. The District misunderstands Plaintiff's argument. If Plaintiff was employed under a 240 day contract, her salary would be higher to account for the twenty extra days worked, and she would be entitled to two weeks paid vacation.

Based on the evidence offered by Plaintiff, the Court finds she has met her prima facie case

of gender discrimination. As its legitimate, nondiscriminatory reason, the District contends that the contract terms and salaries are a product of negotiation, experience, and school size, not gender. The District also points out the contract of Josephine Jackson, a female who was employed under numerous 240 day contracts. Plaintiff asserts that Jackson is a Federal Programs Director, not a principal, and thus is not comparable. Plaintiff's Complaint asserts that not only were similarly situated female principals allegedly discriminated against, but also other administrators. The Complaint stated, "Plaintiff and other female principals and administrative staff were employed for eleven (11) months while male principals and administrative staff members similarly situated were employed for twelve (12) months to perform . . . substantially the same duties." Although Plaintiff's Complaint includes the term administrative staff, Plaintiff never compared the salaries of any male or female administrators with 220 or 240 day contracts. The Court also is not convinced Jackson, as a Federal Programs Director, is "similarly situated" to a principal in the District. However, the Court does find the District's explanation that the contract terms and salaries are a product of negotiation, experience, and school size, not gender is a legitimate non-discriminatory reason. See Parker v. State of La. Dep't of Educ. Special Sch. Dist., 323 Fed. Appx. 321, 327 (5th Cir. 2009) (holding that defendant's burden at this stage is merely one of production – not persuasion).

Plaintiff must now show that the District's purported reason is merely a pretext for gender discrimination. Plaintiff first asserts that the District's explanation still does not explain why all male principals were given 240 day contracts, plus two (2) weeks vacation, yet no female principals received similar benefits. Although that fact is curious, the Plaintiff still needs more to demonstrate pretext. Plaintiff asserts that the District's explanation is mere pretext for discrimination as the salaries could not be based on experience and school size. For example, Dr. Eunice Jordan was the

7

principal of Quitman County Elementary School. She had an AAA Certificate and twenty-three years experience when she executed her 2002-2003 contract, yet she was employed for 220 days that year. The principal that replaced Dr. Jordan in 2004 was Carl Palmer. Palmer only had an AA Certificate and a lesser degree, yet he executed a 240 day contract at the same school Dr. Jordan was employed. Further, Dr. Jordan's salary for 2003-2004 was $61,898.00. For the 2004-2005 school, Palmer was paid $68,804.00 – an almost $7000.00 difference.

At this stage, the Court finds that Plaintiff has presented sufficient evidence of pretext to avoid summary judgment on Plaintiff's salary disparity claim.

Plaintiff also complains of disparate treatment regarding sick leave and attendance at professional development seminars. However, Plaintiff never identifies or compares her alleged disparate treatment to any other employee. The Court finds Defendants are entitled to summary judgment as to these specific claims.

B. Retaliation

Plaintiff alleges her non-renewal and transfer constitutes retaliation in violation of Title VII and 42 U.S.C. § 1981. To present a prima facie case of retaliation under either Title VII or § 1981, a plaintiff must show that: (1) she is engaged in an activity protected by Title VII; (2) she was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. See Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 319 (5th 2004); see also Foley v. Univ. of Houston Sys., 324 F.3d 310, 316 (5th Cir. 2003) (the elements for establishing a prima facie case of retaliation under §1981 are identical to those that must be established under Title VII). To demonstrate the occurrence of an adverse employment action, a plaintiff must show that he suffered an "ultimate employment decision." See Davis, 383

8

F.3d at 319. Ultimate employment decisions include actions affecting job duties, compensation, or benefits, such as hiring, granting leave, discharging, promoting, and compensating. Id.

If plaintiff succeeds in making a prima facie case, the burden then shifts to the defendant to proffer a legitimate rationale for the underlying employment action. Aldrup v. Caldera, 274 F.3d 282, 286 (5th Cir. 2001). If the defendant makes this showing, the burden shifts back to the plaintiff to demonstrate that the employer's articulated reason for the employment action was a pretext for retaliation. Id.

The Court finds Plaintiff satisfies the first and second elements of her prima facie case. First, Plaintiff expressed her concerns to Superintendent Towner about being treated differently than male principals with respect to length of her contract, pay, fringe benefits, sick leave policy, and attendance at professional development seminars. On February 5, 2007, Plaintiff requested Towner place her name on the Board's agenda, so she could discuss her concerns at the next Board meeting. Plaintiff's complaints constitute protected activity. 42 U.S.C. § 2000e-3(a) (2001) (protected activity is defined as opposition to any practice rendered unlawful by Title VII). Secondly, the parties do not dispute Plaintiff's non-renewal and transfer constitute an adverse employment actions.

As for the third prong of her prima facie case, "a plaintiff need not prove that [her] protected activity was the sole factor motivating the employer's challenged decision in order to establish the 'causal link' element of a prima facie case." Evans v. City of Houston, 246 F.3d 344, 353 (5th Cir. 2001); see also Montemayor v. City of Antonio, 276 F.3d 687, 692 (5th Cir. 2001) (the causation showing at the *prima facie* stage is much less stringent than the "but for" standard). The temporal proximity between an employee's protected activity and an adverse employment action may provide insight into the existence of a causal link. See Swanson v. Gen. Servs. Admin., 110 F.3d 1180, 1188

9

(5th Cir), *cert. denied,* 522 U.S. 948, 118 S. Ct. 366, 139 L. Ed. 2d 284 (1997). An inference of proximate causality may be drawn when the adverse employment action follows close on the heels of a plaintiff's protected conduct. Id. at 1188 (citations omitted).

Plaintiff was emailed a notice of intent not to renew her contract the same day she requested her name be put on the Board agenda. Further, Plaintiff was removed from her position as middle school principal and transferred to a different position three days later. Considering the close temporal proximity between Plaintiff's protected activity and the adverse employment actions, as well as the permissive inference which may be draw therefrom, the Court concludes that Plaintiff has made her prima facie showing under the third element of a retaliation claim. The burden now shifts to the Defendant to articulate a legitimate, non-retaliatory reason for Plaintiff's non-renewal and transfer. Aldrup, 274 F.3d 282 at 286.

The District asserts Plaintiff was non-renewed and transferred when the middle school was designated as a level one priority school by the State of Mississippi. The current system accountability ratings began in 2003 following the passage of the No Child Left Behind Act in 2001. Under this system, each school is rated from one to five, with five being the highest rating a school can receive and one the lowest rating. These rating are derived based on numerous test scores and other criteria. Any school that receives a level one rating is considered a priority school and the State of Mississippi automatically sends in a team of evaluators to assess all personnel at the underperforming school. Prior to Plaintiff's arrival as middle school principal, the school received a level three rating from the State of Mississippi for the 2003-2004 school year. Under Plaintiff's direction for half the 2004-2005 school year, the ratings dropped to level two school. Then, in September 2006, Quitman County Middle School received a level one priority school rating for the

2005-2006 school year.

Following the priority school rating, the Mississippi Department of Education sent investigators to the middle school to conduct interviews and determine the reason for the school's poor performance. According to the District, Plaintiff was interviewed and evaluated by investigators in the fall and winter of 2006-2007; Plaintiff failed her evaluation. Jo Ann Walton, an associate hired to observe and give instruction following the school's priority designation, testified that Plaintiff was uncooperative and refused to adhere to instructions given to her. The District contends that for these reasons Plaintiff was non-renewed and transferred to a different position. The Court finds the District's proffered reasons constitute legitimate, non-discriminatory reasons for its adverse actions.

Plaintiff's retaliation claim requires additional analysis, however, as the Fifth Circuit has held that "where there is a close timing between an employee's protected activity and an adverse employment action, the employer must offer 'a legitimate, nondiscriminatory reason that explains both the adverse action *and the timing*.'" Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 408 (5th Cir. 1999) (quoting Swanson v. Gen. Servs. Admin., 110 F.3d 1180, 1188 (5th Cir. 1997)). Here, the timing is extremely close – Plaintiff received Towner's notice of intent not to renew the same day she requested her name be put on the Board's agenda and was transferred to different position three days later. The District has offered no explanation for the timing of these actions.

Although the District has offered a legitimate, non-discriminatory reason for Plaintiff's non-renewal and transfer, the District failed to provide a legitimate non-discriminatory reason for the timing of these actions. Thus, the District is not entitled to summary judgment on Plaintiff's retaliation claims.

B.  Title VII Individual and Official Capacity Claims Against Valmadge Towner

Plaintiff sued Superintendent Towner in his individual and official capacities under Title VII, which forbids *employers* from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1) (emphasis added). Under Title VII, an "employer" includes any "person engaged in an industry affecting commerce . . . and any agent of such person." 42 U.S.C. section 2000e(b). The Fifth Circuit has held that there is no individual liability for employees under Title VII. See Indest v. Freeman Decorating, Inc., 164 F.3d 258, 262 (5th Cir. 1999); Grant v. Lone Star Co., 21 F.3d 649, 652 (5th Cir. 1994). "While Title VII's definition of the term employer includes 'any agent' of an employer, Congress's purpose was merely to import respondeat superior liability into Title VII." Smith v. Amedisys, Inc., 298 F.3d 434, 448 (5th Cir. 2002) (relying on Indest, 164 F.3d at 262); Grant, 21 F.3d at 652. Moreover, "a plaintiff is not entitled to maintain a Title VII action against both an employer and its agent in an official capacity." Smith, 298 F.3d at 448 (relying on Indest, 164 F.3d at 262). In effect, a Title VII suit against Valmadge Towner is actually a suit against the District.

Accordingly, Defendants' Motion for Summary Judgment as to Plaintiff's Title VII claims against Valmadge Towner in his individual and official capacities is granted.

C.  Section 1983, Section 1981,and Equal Protection–Individual Capacity

Plaintiff alleges Valmadge Turner "violated her rights and retaliated against her for attempting to assert her federal constitution and statutory rights to be free from discriminatory treatment and because she intended to report the same to the Board." Plaintiff contends Towner's actions violated the Equal Protection Clause, 42 U.S.C. § 1981, and 42 U.S.C. § 1983. "The inquiry

12

into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983 [ ] and Title VII." Lauderdale v. Texas Dept. Of Criminal Justice, 512 F.3d 157, 166 (5th Cir. 2007).

Towner asserts the defense of qualified immunity for the individual claims against him. Claims against individual public officials under § 1981 are subject to the defense of qualified immunity, as are claims against such individuals under § 1983. Foley v. Univ. of Houston Sys., 355 F.3d 333, 338 (5th Cir. 2003). Qualified immunity shields government officials performing discretionary functions from civil liability "'insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known.'" Flores v. City of Palacios, 381 F.3d 391, 393-394 (5th Cir. 2004) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). Applying this standard, the Court views the facts in the light most favorable to the party asserting the injury and determine (1) whether the defendant's conduct violated the plaintiff's constitutional rights, and (2) "whether the defendant[']s conduct was objectively reasonable in the light of clearly established law." Goodson v. City of Corpus Christi, 202 F.3d 730, 736 (5th Cir. 2000) (internal quotation marks omitted). If the defendant's conduct did not violate plaintiff's constitutional rights under the first prong, or his conduct was objectively reasonable under the second prong, he is entitled to qualified immunity. Once a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff to show that the defense is inapplicable. Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007).

In response to Defendant's motion regarding qualified immunity on individual capacity claims, Plaintiff states that Towner has not asserted a defense of qualified immunity. To the contrary, the District and Towner's second defense in its answer provides: "To the extent that the

complaint seeks damage against Valmadge Towner in his individual capacity pursuant to federal law, Towner is entitled to be dismissed from this action pursuant to the doctrine of qualified immunity."

Assuming there is sufficient evidence in the record that Towner violated Plaintiff's clearly established constitutional rights, Plaintiff did not satisfy her burden by putting forth any evidence that Towner was objectively unreasonable under the circumstances. The Court finds Plaintiff's claims against Towner in his individual capacity waived.

D.    Equal Protection Clause and § 1983–Official Capacity

Plaintiff has also sued Towner in his official capacity for violations under the Equal Protection Clause and 42 U.S.C. § 1983. Suing a government official in his official capacity is another way of pleading against the entity of which the official is an agent. Kentucky v. Graham, 473 U.S. 159, 165, 105 S. Ct. 3099, 87 L. Ed. 2d 144. Stated differently, an official capacity suit is to be treated as a suit against the entity. Id. at 171, 105 S. Ct. 3099 ("An official capacity suit is to be treated as a suit against the entity."). Thus, Defendant Towner is entitled to summary judgment on Plaintiff's official capacity claims against him.

In order for municipal liability to be imposed under § 1983, three elements must be proven: a policymaker, an official policy, and a violation of constitutional rights whose "moving force" is the policy or custom. Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001) (citing Monell v. Dep't of Social Services, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). "[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." Id. (internal citations omitted). Here, Plaintiff failed to allege that the

14

District had any official policy or custom that was the moving force behind the actions taken against her. Thus, Defendants are entitled to summary judgment on this claim.

II.     Plaintiff Barbara Akon's Cross-Motion for Summary Judgment

Plaintiff's Response to Quitman County and Towner's Motion for Summary judgment dated February 5, 2010, requests that the Court deny Defendants' Motion for Summary Judgment, and also requests that the Court affirmatively award her summary judgment. Plaintiff's cross-motion for summary judgment is untimely. The dispositive motion deadline was January 19, 2010. Plaintiff never sought leave of Court to file her untimely motion. Further, Plaintiff's motion is improper pursuant to Uniform Local Rule of Civil Procedure 7(B)(3)(C), which provides: "A response to a motion may not include a counter-motion in the same document. Any motion must be an item docketed separately from a response." Plaintiff incorrectly filed her untimely Motion for Summary Judgment in the same document as her Response to Quitman County and Towner's Motion for Summary Judgment. Accordingly, the Court denies Plaintiff's Motion for Summary Judgment as untimely and procedurally barred.

*Conclusion*

Based on the forgoing analysis, Defendant Quitman County School District and Valmadge Towner's Motion for Summary Judgment [33] is GRANTED in part and DENIED in part, and Plaintiff's Motion for Summary Judgment [37] is DENIED.

A separate order in accordance with this opinion shall issue this day.

SO ORDERED, this the 26th day of February, 2010.

                                                 **/s/ Sharion Aycock**
                                                 **UNITED STATES DISTRICT JUDGE**